UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEREMY R.J. HIGGINS,**

    **Plaintiff,**

  v.                                    Case No. 2:17-cv-1152
                                          Judge George C. Smith
**COMMISSIONER OF SOCIAL**            Magistrate Judge Chelsey M. Vascura
**SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jeremy R.J. Higgins ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply Memorandum (ECF No. 14), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                **I.**      **BACKGROUND**

Plaintiff filed his application for Title II Social Security Benefits on December 30, 2013, alleging that he had been disabled since June 1, 1992. (R. 218.) On October 12, 2016, following initial administrative denials of Plaintiff's application, a hearing was held before Administrative Law Judge Timothy Gates (the "ALJ"). (*Id.* at 59–100.) At the hearing, Plaintiff amended his alleged disability onset date to November 22, 2013. (*Id.* at 65.)

### A. Hearing Testimony

Plaintiff, represented by counsel, appeared and testified. Plaintiff stated he lives with his parents and that, on a typical day, he mainly watches TV and plays video games, which involve being in contact with other people over the internet. (R. 66, 71.) Twice a week, he plays an in-person card game with 10–16 other people, though he does not interact as much with players he does not already know. (*Id.*) When asked about cooking or cleaning around the house, he testified that he picks up trash in his own room, but that his parents usually fix meals as he does not know how to use the stove. (*Id.* at 75.) He has attempted work several times, but he was always forced to stop, after periods ranging from a day to a couple of months, due to anxiety and depression. (*Id.* at 69, 76, 79, 83–84.) Plaintiff also testified that he sometimes argues with family and friends, which involves yelling and using explicit language. (*Id.* at 77–78.)

Plaintiff's mother also testified at the hearing. She testified that Plaintiff was unable to live on his own, primarily due to his inability to handle money, but also because he could not use the stove or oven, do laundry, or drive. (R. 87–88, 90.) She also testified that Plaintiff needs to be reminded to shower, brush his teeth, and clean his room. (*Id.* at 94.)

### B. Plaintiff's Treating Physician

The record contains a number of progress notes and three letters from Jorden B. Weiss, D.O., who treated Plaintiff's autism, bipolar affective disorder, depression, and anxiety over the course of fifteen years. (R. 367.) The progress notes, covering the period of May 2009 through August 2016, indicate almost uniformly that Plaintiff was "doing well," his mood was "stable," and his attention and focus were "good." (*Id.* at 301–11, 359, 490–98.) However, a July 12, 2016 letter from Dr. Weiss states that "[Plaintiff's] symptoms include severe mood lability, severely impaired attention, focus and organization, severe cognitive dysfunction, impaired

memory, explosive temper, irritability and severely impaired social skills." (*Id.* at 367.) Dr. Weiss further opined that "[d]ue to his severe disabilities and symptoms, [Plaintiff] will never be capable of obtaining a job or sustaining employment." (*Id.*)

Dr. Weiss wrote an additional letter dated September 8, 2016, "to clarify any discrepancy you may have regarding the severity of symptoms experienced by [Plaintiff] and what I have reported in my notes." (*Id.* at 489.) Dr. Weiss states that "[m]y notes refer to his behavior during our medication check appointments which are quite brief and assume an otherwise informed knowledge of [Plaintiff's] severe mental disability and behavioral difficulties." (*Id.*) He further opined that Plaintiff's autistic disorder "prevents him from functioning in society and the workplace," that Plaintiff is "unable to provide for his own [activities of daily living] and needs his family to provide physical, emotional, and financial support," and that Plaintiff "could not and will never live independently from his family." (*Id.*)

## C. Other Opinions Regarding Nonexertional Limitations

The record also contains several other opinions from non-treating sources relating to Plaintiff's nonexertional limitations. Dr. Robert Gordon, Ph.D., conducted an evaluation on October 31, 2013, to determine Plaintiff's eligibility for services through the Franklin County Board of Developmental Disabilities. (R. 289–301.) Dr. Gordon noted that Plaintiff maintained intermittently appropriate eye contact, has difficulty conversing with others, does not budget money to cover his expenses for a week, relies on others for transportation, does not do any housecleaning, and does not consistently bathe himself. (*Id.* at 296.) Results from the Social Responsiveness Scale–Second Edition indicated that Plaintiff reported "overall moderate deficiencies" in everyday social interactions, while his mother reported that Plaintiff has "severe deficiencies." (*Id.* at 299.) Dr. Gould further diagnosed Plaintiff with Autism Spectrum

3

Disorder and concluded that Plaintiff's results "indicate his disability is likely to impact his ability to communicate and interact with others," and Plaintiff "is expected to have difficulty functioning independently and taking care of his personal needs." (*Id.* at 301.)

State agency psychologists Drs. Voyten and Tangemen also reviewed Plaintiff's medical records and rendered opinions as to Plaintiff's functionality on May 21, 2014, and October 2, 2014. (R. 101–115, 117–129.) Both rated Plaintiff as having mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration. (R. 108, 122.) Neither opined that Plaintiff met or equaled a listing.

**D.     The ALJ's Decision**

On January 5, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 13–30.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

during the period from his alleged onset date of November 22, 2013.  (*Id.* at 15.)  The ALJ found at step two that Plaintiff had the severe impairments of autism spectrum disorder, anxiety disorder, attention deficit-hyperactivity disorder, hypothyroidism, and obesity.  (*Id.* at 15.)

The ALJ concluded at step three that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 16.)  Specifically, the ALJ considered and rejected Listings 9.00 (endocrine disorders), 12.02 (organic mental disorders), 12.05 (intellectual disability), 12.06 (anxiety-related disorders), and 12.10 (autistic disorder and other pervasive developmental disorders).  (*Id.* at 16–17.)

After setting forth Plaintiff's residual functional capacity ("RFC"),[2] the ALJ relied on the hearing testimony of a vocational expert to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period.  (R. 30.)

In this action, Plaintiff challenges only (1) the ALJ's determination at step three that Plaintiff did not satisfy Listing 12.10 and (2) the ALJ's alleged failure to properly evaluate the opinions of Plaintiff's treating physician, Dr. Weiss.

## II.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).

5

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 8): (1) the ALJ's alleged failure to evaluate Plaintiff's autism disorder under Listing 12.10, and (2) the ALJ's alleged failure to accord appropriate weight to the opinions of Plaintiff's treating physician. The undersigned considers each argument in turn.

**A.     Listing 12.10**

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision where medical evidence "almost establishes a disability" under a Listing). The burden is on the claimant to provide sufficiently complete and detailed medical evidence to enable the Secretary to determine whether all of a listing's elements are met. *Jones v. Comm'r*, 336 F.3d 469, 474 (6th Cir. 2003); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

Plaintiff alleges that the ALJ failed to properly consider whether Plaintiff met Listing 12.10 (autistic disorders)[3] at step three of the process. This listing is met when the following criteria are satisfied:

> A. Medically documented findings of the following:
>
>> 1. For autistic disorder, all of the following:
>>
>>> a. Qualitative deficits in reciprocal social interaction; and
>>>
>>> b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity; and
>>>
>>> c. Markedly restricted repertoire of activities and interests;
>
> * * *

---

[3] Effective January 17, 2017, the Social Security agency revised the criteria for evaluating mental disorders and changed the requirements of Listing 12.10. *See* 81 F.R. 66138 (Sept. 26, 2016); 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ issued his opinion on January 5, 2017, and correctly applied the previous version of Listing 12.10.

AND

  B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404 App. 1 § 12.10(A)–(B). Plaintiff contends that the ALJ mentioned Listing 12.10 only in passing and did not meaningfully evaluate the medical evidence in the record in relation to the listing.

  Plaintiff is correct that, in determining whether a claimant satisfies the requirements of a Listing, the ALJ must "actually evaluate the evidence, compare it to Section [12.10] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

  Although the ALJ may have mentioned Listing 12.10 only in passing, the Commissioner points out that the criteria of Listing 12.10, Paragraph B are common to several of the listings considered by the ALJ. (*See* 20 C.F.R. Part 404 App. 1 §§ 12.02, 12.05, 12.06.) These criteria are commonly referred to as "Paragraph B" criteria, because they appear in Paragraph B of most of the mental disorder listings. (*Id.*) And although he did not refer expressly to Listing 12.10 in doing so, the ALJ did substantively consider the Paragraph B criteria over the course of several pages. (ALJ's Decision, R. 17–19.) The ALJ concluded that those criteria were not met, and Plaintiff's argument for error in that conclusion relies primarily on the ALJ's failure to credit the

8

opinions of his treating physician, Dr. Weiss. (Pl.'s Statement of Errors 9, ECF No. 8.) But as explained below, the ALJ properly discounted Dr. Weiss's opinions.

Moreover, because a claimant must satisfy all criteria of a listing, the ALJ need not have considered Listing 12.10's other criteria if he properly concluded that the Paragraph B criteria were not met. Thus, even though the ALJ did not consider Listing 12.10's Paragraph A criteria, it is not the case that the ALJ "failed to actually evaluate [Plaintiff's] autism disorder under Listing 12.10" (Pl.'s Statement of Errors 6, ECF No. 8), and it is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     Plaintiff's Treating Physician**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

9

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222

10

(6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "very little weight" to the opinions Dr. Weiss. Although Plaintiff maintains that the ALJ failed to give good reasons for the weight assigned, the ALJ provided the following lengthy discussion of how he arrived at his determination:

> The undersigned has also considered the March 15, 2016, July 12, 2016 and September 8, 2016 statements from Dr. Weiss (Exhibits 6F; 14F; 15F). On March 15, 2016, Dr. Weiss noted that the claimant had severe deficits in memory and cognition, and continued to be unable to acquire employment due to increased focusing and cognitive difficulties (Exhibit 15F/4). In his July 12, 2016 statement, Dr. Weiss indicated that the claimant's symptoms included severe mood lability, severely impaired attention, focus and organization, severe cognitive dysfunction, impaired memory, explosive temper, irritability and severely impaired social skills and opined that the claimant would never be capable of obtaining a job or sustaining employment due to his severe disabilities and symptoms (Exhibit 6F). In his September 8, 2016 statement, the doctor provided that the claimant had a severe and debilitating autistic disorder which prevented him from functioning in society and the work place. Dr. Weiss further noted that the claimant had no friends or social contacts and had severe impairment with social skills. He also provided that the claimant could not and will never live independently from his family, was unable to provide for his own activities of daily living, and needed his family to provide physical, emotional and financial support. Additionally, Dr. Weiss indicated that the claimant had severe problems with organization, panic attacks, mood swings, and depressive symptoms, as well as explosive rage and might become violent toward family and treating sources. Finally, Dr. Weiss indicated that his notes referred to the claimant's behavior during his "quite brief" medication check appointments, but still reflected an otherwise informed knowledge of the claimant's severe mental disability and behavioral difficulties, and stated that the

11

claimant would never live independently of his caretakers or a residential long-term facility (Exhibit 14F).

Treating source opinions are to be given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence (20 CFR 416.927(d)). The undersigned recognizes that Dr. Weiss is a treating source. However, as noted by the doctor, his own treatment notes were brief, and focused on the claimant's medications. These two statements from the doctor and [*sic*] inconsistent with and unsupported by the totality of the evidentiary record, to which he did not have access. Careful review of the evidentiary record, including the doctor's own treatment notes, simply fails to find support for his opinions with respect to the claimant's global functional deficits, episodes of explosive rage and violence toward family members and/or other treating sources. In fact, records from the FCBDD show the claimant did not have a past or current history of hurting/making threats to others or being verbally aggressive. Moreover, the records show he was a "nice, intelligent, kind and considerate young man" (Exhibits 7F/6; 8F/8). Dr. Weiss noted no explosiveness by the claimant on February 25, 2015 (Exhibit 15F/6). As noted above, Dr. Weiss noted severe and work preclusive cognitive and memory deficits on March 15, 2016. However, the doctor noted the claimant's attention and focus were stable that very same day, which is internally inconsistent with this opinion regarding work preclusive cognitive and memory deficits. Additionally, he reported the claimant's attention and focus was good on January 29, 2016 as well (Exhibit 15F/4-5). Moreover, the claimant and his mother have both reported that the claimant did have some friends. Additionally, records from the FCBDD show that being with friends and family constituted a good day for him (Exhibit 7F/4). There is nothing in the record documenting panic attacks or explosive anger by the claimant, nor did he endorse these during his psychological consultative evaluation, where he arguably would have reported such symptomology. Additionally, despite Dr. Weiss' assertion of mood swings by the claimant, his other treating sources consistently failed to note or appreciate any mood instability. Moreover, as noted earlier, Dr. Weiss' own treatment notes show the claimant's mood was good or stable, and that he was doing well on many occasions (Exhibits 2F; 4F). Finally, the doctor opined that the claimant's autistic disorder prevented him from functioning in the work place (Exhibit 14F). Treating source opinions are to be given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence (20 CFR 416.927(d)). With respect to Dr. Weiss' opinions regarding the claimant's inability to work, no special significance is given to the source of an opinion on whether the claimant is "disabled" or "unable to work,"' (20 CFR 416.927(d) and (e)). Given the foregoing, the undersigned assigns very little weight to Dr. Weiss' statements.

(R. 26–27.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Weiss's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence. During his medication check appointments, Dr. Weiss almost uniformly described Plaintiff as "doing well," as having "stable" mood, and as having "good" attention and focus. In contrast, his July and September 2016 letters describe Plaintiff as having severe mood lability and severely impaired attention, focus and organization, without citation to any supporting evidence. As the Sixth Circuit has held, an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016).

Moreover, Dr. Weiss's purported explanation for the discrepancy between his opinions and his progress notes—that his "notes refer to [Plaintiff's] behavior during our medication check appointments which are quite brief and assume an otherwise informed knowledge of [Plaintiff's] severe mental disability and behavioral difficulties"—do not resolve the discrepancy. The record does not reflect that Dr. Weiss observed Plaintiff at any time outside of his medication check appointments and is devoid of any other basis for how Dr. Weiss might have acquired "an otherwise informed knowledge of [Plaintiff's] severe mental disability and behavioral difficulties." At best, it appears that Dr. Weiss relied on Plaintiff's subjective reports and complaints. *Cf. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, [the claimant's] treating physician, was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data.").

Further, as the ALJ points out, other evidence in the record contradicts Dr. Weiss's opinions that Plaintiff suffers from severe cognitive dysfunction, impaired memory, explosive temper, irritability and severely impaired social skills. The Franklin County Board of Development Disability's ("FCBDD") records indicate Plaintiff did not have a history of hurting/making threats to others or verbal aggression and instead was a "nice, intelligent, kind and considerate young man." (R. 373, 391.) Additionally, Plaintiff and his mother each testified that Plaintiff had some friends and reported to FCBDD that it was a good day for Plaintiff when he spent time with friends and family. (*Id.* at 371.) Nor is there evidence in the record supporting any explosive anger or panic attacks.

Finally, the ALJ need not afford controlling weight to the opinion of a treating physician on issues reserved to the Commissioner—*e.g.*, whether Plaintiff is disabled. 20 C.F.R. § 404.1527(d)(1). Thus, Dr. Weiss's opinion that "[Plaintiff] will never be capable of obtaining a job or sustaining employment" are not controlling and the ALJ did not err in discounting it. The undersigned is therefore persuaded that the ALJ gave good reasons for discrediting Dr. Weiss's opinion and that those reasons are supported by substantial evidence.

In sum, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Weiss's opinion. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## IV. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE